IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville December 16, 2020

**STATE OF TENNESSEE v. CEDARIUS J. ROBERTSON**

**Appeal from the Circuit Court for Madison County**
**No. 19-873    Donald H. Allen, Judge**

_____

**No. W2020-00365-CCA-R3-CD**

_____

The Appellant, Cedarius J. Robertson, was convicted in the Madison County Circuit Court of being a convicted felon in possession of a firearm, a Class B felony; tampering with evidence, a Class C felony; driving under the influence (DUI) and DUI per se, Class A misdemeanors; possessing a handgun while under the influence, a Class A misdemeanor; and failing to maintain his lane of travel, a Class C misdemeanor.  After a sentencing hearing, the trial court merged the DUI convictions and ordered that he serve an effective thirteen-year sentence in confinement.  On appeal, the Appellant contends that the evidence is insufficient to support his convictions of being a convicted felon in possession of a firearm and possession of a handgun while under the influence.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Daniel J. Taylor (on appeal and at trial), Jackson, Tennessee, for the appellant, Cedarius J. Robertson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and April K. Cornelison, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In October 2019, the Madison County Grand Jury indicted the Appellant for being a convicted felon in possession of a firearm, tampering with evidence, assaulting Hunter

Taylor, assaulting Tyler McDonald, DUI, DUI per se, possessing a handgun while under the influence, and failing to maintain his lane of travel. The Appellant went to trial in November 2019.

At trial, Trooper Cameron Jones of the Tennessee Highway Patrol (THP) testified that he was assigned to Madison County and that he had received "advanced level training" in detecting motorists driving under the influence. On September 30, 2018, Trooper Jones was working the "midnight shift" and was driving a "marked" police vehicle. He said that he saw a black Chevrolet Silverado traveling toward him on East Chester and that the truck "almost hit the curb." The truck turned right onto Highway 70, so Trooper Jones turned around and caught up with the truck. He said the truck was moving "from one lane to the other, crossing the divided line, driving center of it, and crossing the white line." Trooper Jones "suspected DUI" and turned on his blue lights, but the driver did not stop immediately.

Trooper Jones testified that a couple of minutes later, the truck turned into a liquor store parking lot, which was "quite a ways" from where Trooper Jones had initiated the traffic stop. Trooper Jones approached the driver's side of the truck and noticed the smell of alcohol coming from inside the vehicle. The driver, who was the Appellant, was "digging around in the glove box," and Trooper Jones shined his flashlight into the truck. The Appellant's window was down, and Trooper Jones saw a pistol on the driver's side floorboard at the Appellant's feet. Trooper Jones removed the Appellant from the truck for officer safety, patted him down, and asked about the gun. The Appellant said he did not know anything about the firearm. Trooper Jones did not handcuff the Appellant but had the Appellant sit in the back seat of his police vehicle. Trooper Jones retrieved the firearm, a loaded Ruger nine-millimeter pistol, from the truck and called for backup.

Trooper Jones testified that the Appellant's eyes were red, bloodshot, and "watery" and that the Appellant's speech was slurred. The Appellant told the officer that he "was leaving the area known as Mary Long's" and that he "drank some beer, had a couple of shots, and he knew he was drunk." Trooper Jones said Mary Long's was "a known area for people to go and drink, buy liquor illegally, gamble illegally."

Trooper Jones testified that he had the Appellant perform field sobriety tests and that the Appellant said he was too intoxicated to perform one of the tests. The Appellant exhibited clues of impairment during the tests, and Trooper Jones arrested him for DUI. Trooper Jones said that while the Appellant was in the back of his patrol car, the Appellant telephoned a family member. During the call, which was recorded by Trooper Jones's in-car audio-recorder, the Appellant told the family member that he was going to jail because he was "drunk" and because he had a gun.

- 2 -

Trooper Jones testified that the Appellant was "extremely cooperative." However, "some things transpired" when Trooper Jones took the Appellant to jail, so Trooper Jones had to transport the Appellant to the hospital. The Appellant consented to a blood draw at the hospital, and Trooper Jones watched as a phlebotomist drew the Appellant's blood. Trooper Jones received the Appellant's sealed blood sample and "placed it into evidence" at THP headquarters. At some point, Trooper Jones checked the Appellant's criminal history and learned the Appellant could not legally possess a firearm because he was a convicted felon. Trooper Jones said that the black truck was registered to the Appellant and that the Appellant was the only person in the truck.

The State played a video recording of the Appellant's traffic stop for the jury. Relevant to this appeal, the video confirms that Trooper Jones shined his flashlight into the truck and that he asked the Appellant to step out of the truck. Trooper Jones patted down the Appellant, escorted the Appellant to the front of the police car, and stated that he had the Appellant get out of the truck because "you got a handgun up there." Trooper Jones asked, "Is that gun yours?" The Appellant answered, "No, sir." Trooper Jones asked, "Whose is it?" The Appellant responded, "A handgun?" Trooper Jones told the Appellant that the gun was on the floorboard on the driver's side, and the Appellant said it must have been his passenger's gun. The Appellant asked, "Is it on the passenger side?" Trooper Jones said, "No, man, it's right there by the driver's seat about where your feet would have been." After Trooper Jones put the Appellant into his police vehicle, he again asked if the gun belonged to the Appellant. The Appellant said no, and Trooper Jones asked him, "Whose gun is it?" The Appellant's response was inaudible.

On cross-examination, Trooper Jones acknowledged that the Appellant claimed the gun did not belong to him, that a passenger had been in his truck earlier, and that he and the passenger went to Mary Long's Café. Trooper Jones also acknowledged that the Appellant was "heavily intoxicated" and "unsteady" on his feet. Trooper Jones never saw the Appellant hold or touch the gun, and fingerprints were not collected from the weapon. Trooper Jones acknowledged that the Appellant was polite and that the Appellant admitted to smoking marijuana and using cocaine.

On redirect examination, Trooper Jones testified that he asked if the Appellant let other people drive the truck. The Appellant said, "I just had a passenger with me." The Appellant never said that the passenger drove the truck or that Jeremy Haynes left the gun in the truck. The Appellant told Trooper Jones, "'It was my truck. What can I say?'"

After Trooper Jones's testimony, the State read a stipulation to the jury. The parties stipulated that on August 18, 1999, the Appellant was convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving the use of a deadly weapon.

Officer Seth Presslar testified that on September 30, 2018, he was working for the Jackson Police Department and went to the scene of the traffic stop to assist Trooper Jones. When Officer Presslar arrived, the Appellant was outside of the truck and was standing in front of Trooper Jones's vehicle. Trooper Jones had already seized the gun. Officer Presslar "made contact" with the Appellant and noticed that the Appellant had slurred speech and red eyes. Officer Presslar said that he also noticed "some white substance" on the Appellant's nostril and around the Appellant's mouth and that the Appellant "admitted to using cocaine recently." Officer Presslar thought the Appellant was under the influence of an intoxicant, checked the Appellant's criminal history, and learned that the Appellant was a convicted felon. On cross-examination, Officer Presslar testified that his contact with the Appellant was "very brief."

Julian Conyers, a special agent forensic scientist with the Tennessee Bureau of Investigation (TBI), testified as an expert in blood analysis. On October 5, 2018, the TBI received the Appellant's blood sample from the THP. Agent Conyers analyzed the sample for ethyl alcohol and determined that the Appellant's blood alcohol content was 0.145 gram percent. He said that the Appellant's blood was collected at 3:20 a.m., three hours after the traffic stop, and that the Appellant's blood alcohol content was probably higher than 0.145 gram percent at the time of the stop.

Hunter Taylor, a detention specialist for the Madison County Sheriff's Department (MCSD), testified that Trooper Jones brought the Appellant into the jail on September 30, 2018. Taylor said that he assisted with "booking" the Appellant into the jail, that the Appellant was "kind of slurring his speech," and that the Appellant appeared to be intoxicated. Taylor took the Appellant into the jail's dress-out room and saw the Appellant reach down into his sock. The Appellant pulled out a small baggie and "threw" it into his mouth. Taylor grabbed the Appellant and told him to spit out the baggie. The Appellant knocked Taylor's radio microphone off his uniform, so Taylor yelled for officers to come into the room. The officers "took [the Appellant] to the ground" and kept telling him to spit out the baggie. Deputy Tyler McDonald tried to get the baggie out of the Appellant's mouth, but the Appellant bit the deputy's finger. The Appellant also bit Taylor's hand. The officers were unable to retrieve the baggie from the Appellant because he swallowed it. However, Taylor saw a green, leafy substance that appeared to be marijuana in the Appellant's mouth.

On cross-examination, Taylor testified that he was wearing a latex glove when the Appellant bit his hand and that the bite did not penetrate the glove. Taylor felt "pressure" by the bite but was not injured.

Deputy Tyler McDonald of the MCSD testified that on September 30, 2018, he was working as a detention specialist at the jail and heard Hunter Taylor yell his name. Deputy McDonald went into the dress-out room and saw Taylor and the Appellant "against the wall scuffling." Deputy McDonald "escorted" the Appellant to the floor, and Taylor yelled that the Appellant was trying to swallow a substance. Deputy McDonald saw the edge of a bag sticking out of the Appellant's mouth and tried to hold the Appellant's mouth open so that Taylor could retrieve the bag. However, the Appellant "bit down" on Deputy McDonald's finger, so Deputy McDonald "had to resort to striking" the Appellant until the Appellant released his finger. Deputy McDonald said, "It hurt. It was like strong pressure." The Appellant continued to struggle, so Taylor placed a Taser against the Appellant but did not activate it. Taylor told the Appellant to calm down, and the Appellant did so. Deputy McDonald saw a green, leafy substance that looked like marijuana in the Appellant's teeth. On cross-examination, Deputy McDonald testified that he did not require medical treatment for his finger. At the conclusion of Deputy McDonald's testimony, the State rested its case.

Jeremy Haynes testified for the Appellant that on the night of September 29, 2018, which was his birthday, the Appellant picked him up in the Appellant's black truck. Haynes had his nine-millimeter Ruger on his hip, but the gun was covered by his jacket. The Appellant did not see the gun, and Haynes did not tell him about it. Haynes said that they "[rode] around" and that they went to "Mary Long" to have drinks. Haynes took his gun inside Mary Long. At some point, Haynes asked if he could drive the Appellant's truck to the store. The Appellant gave Haynes the keys, and Haynes left Mary Long. When he arrived at the store, he put the gun under the truck's driver's seat and went inside. He then drove back to Mary Long but forgot about the gun and left it under the driver's seat. Haynes went back inside Mary Long but left soon after with a woman. The next day, Haynes remembered that he had left the gun in the Appellant's truck. The Appellant was in jail, so Haynes typed and signed a statement on October 1, 2018, saying that the gun belonged to Haynes. The Appellant did not tell him to type the statement. Haynes also went to court for the Appellant "[e]very time." On cross-examination, Haynes testified that he had known the Appellant for five to seven years and that he knew the Appellant was a convicted felon.

At the conclusion of Haynes's testimony, the jury convicted the Appellant of being a convicted felon in possession of a firearm; tampering with evidence; DUI and DUI per se; possessing a handgun while under the influence; and failing to maintain his lane of travel. The jury acquitted the Appellant of assaulting Hunter Taylor and Tyler McDonald. After a sentencing hearing, the trial court sentenced the Appellant to eleven months, twenty-nine days for each DUI conviction, a Class A misdemeanor, and merged the convictions. The trial court sentenced him to thirteen years for being a convicted felon in possession of a firearm, a Class B felony; ten years for tampering with evidence, a Class C

felony; and eleven months, twenty-nine days for possessing a handgun while under the influence, a Class A misdemeanor. The trial court ordered that the Appellant serve the sentences concurrently. The trial court imposed a fifty dollar fine for the Appellant's failing to maintain his lane of travel, a Class C misdemeanor.

## II. Analysis

On appeal, the Appellant contends that the evidence is insufficient to support his convictions of being a convicted felon in possession of a firearm and possessing a handgun while under the influence because he did not know that Jeremy Haynes had the gun or that Haynes put the gun under the driver's seat. The Appellant asserts that he was "so under the influence that it contributed to his inability to perceive what was in the floor board of his truck." The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-1307(b)(1)(A) provides that it is unlawful for a person to possess a firearm if the person "[h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon." The Appellant stipulated to having a prior conviction for a qualifying felony. Tennessee Code Annotated section 39-17-1321 provides that "it is an offense for a person to possess a handgun while under the influence of alcohol or any controlled substance."

Possession may be actual or constructive. State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014). "[A]ctual possession refers to physical control over an item." Id. However, constructive possession requires only that the Appellant had "the power and intention at a given time to exercise dominion and control over . . . [the item] either directly or through others." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (internal quotations and citations omitted).

Taken in the light most favorable to the State, the evidence shows that a loaded Ruger nine-millimeter pistol was on the floorboard at the Appellant's feet when Trooper Jones stopped him for DUI. The Appellant told Trooper Jones that the gun did not belong to him, that a passenger was in his truck earlier, and that the gun must belong to his passenger. Moreover, Haynes testified for the Appellant that the gun was his firearm, that he accidentally left the gun under the Appellant's driver's seat when he drove the truck to the store, and that the Appellant did not know about the gun. However, the jury obviously discredited the Appellant's claims and Haynes's testimony. As the State pointed out during its questioning of Trooper Jones, the Appellant never told the officer that someone else drove his truck that night or that the gun belonged to Haynes. It is the province of the jury to assess the evidence and the credibility of the witnesses, and we do not revisit the jury's determinations with respect to these issues on appeal. See, e.g., State v. Wagner, 382 S.W.3d 289, 297 (Tenn.2012). Therefore, we conclude that the evidence is sufficient to support the Appellant's convictions.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE